NOT YET SCHEDULED FOR ORAL ARGUMENT

## No. 23-5110

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

––––––––––––––

People for the Ethical Treatment of Animals, Madeline Krasno, and Ryan Hartkopf,

*Plaintiffs–Appellants*,

v.

Lawrence A. Tabak, in his official capacity as Acting Director of the National Institutes of Health, and Xavier Becerra, in his official capacity as Secretary of the U.S. Department of Health and Human Services,

*Defendants–Appellees*.

––––––––––––––

On appeal from the United States District Court for the District of Columbia — No. 1:21-CV-02380 (Howell, B.)

## REPLY BRIEF FOR PLAINTIFFS–APPELLANTS

Ashley Ridgway
Asher Smith
Aaron Frazier
PETA Foundation
1536 16th Street NW
Washington, DC 20036
(202) 483-7382
ashleyr@petaf.org

*Counsel for Plaintiff–Appellant People for the Ethical Treatment of Animals, Inc.*

Katherine A. Fallow
Alexia Ramirez
Stephanie Krent
Jameel Jaffer
Knight First Amendment Institute at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
katie.fallow@knightcolumbia.org

*Counsel for Plaintiffs–Appellants
(Additional counsel on next page)*

Christopher A. Berry
Animal Legal Defense Fund
525 E. Cotati Ave.
Cotati, CA 94931
(707) 795-2533 ext. 1041
cberry@aldf.org

Caitlin M. Foley
Animal Legal Defense Fund
150 South Wacker Drive, Suite 2400
Chicago, IL 60606
(707) 795-2533 ext. 1043
cfoley@aldf.org

*Counsel for Plaintiffs–Appellants*
   *Madeline Krasno and Ryan Hartkopf*

**Table of Contents**

Table of Authorities ...................................................................... ii

Glossary ....................................................................................... iv

Introduction and Summary of Argument ...................................... 1

Argument ...................................................................................... 3

    I.    The NIH's keyword blocking violates the First Amendment. .................. 3

        A.    The record demonstrates that the NIH's keyword blocking discriminates based on viewpoint and Defendants have failed to carry their burden of proving otherwise ..................................... 3

        B.    The NIH's keyword blocking also fails as a content-based speech restriction in either an open public forum or a limited public forum. ................................................................. 10

            1.    The NIH's consistent practice in operating its social media comment threads evinces an intent to create an open public forum, not a limited one. ............................... 10

            2.    The NIH's keyword blocking would be unconstitutional even if the comment threads were limited public forums. ........................................ 14

Conclusion .................................................................................. 19

Certificate of Compliance ........................................................... 21

Certificate of Service .................................................................. 22

i

# Table of Authorities

## Cases

*Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*,
   897 F.3d 314 (D.C. Cir. 2018)............................................ 1, 4, 10, 11, 14, 15

*Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786 (2011)..................................... 4

*Bryant v. Gates*, 532 F.3d 888 (D.C. Cir. 2008)...................................... 14

*Charudattan v. Darnell*, 834 F. App'x 477 (11th Cir. 2020) ................................ 12

*Davison v. Plowman*, No. 1:16cv180 (JCC/IDD), 2017 WL 105984
   (E.D. Va. Jan. 10, 2017) ................................................... 12

*Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122
   (D.C. Cir. 2023)........................................................ 2, 5, 6

*Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001) ................................ 10

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384
   (1993)............................................................... 10

*Minn. Voters All. v. Mansky*, 138 S. Ct. 1876 (2018)............................... 15

*R.J. Reynolds Tobacco Co. v. FDA*, 845 F. Supp. 2d 266
   (D.D.C. 2012) .......................................................... 19

*Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65 (1st Cir. 2004) ........................ 13

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781 (1988)...................... 19

*Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819
   (1995)............................................................... 1, 10

*Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*,
   502 U.S. 105 (1991) .................................................... 5

*Stewart v. D.C. Armory Bd.*, 863 F.2d 1013 (D.C. Cir. 1988)......................... 3, 12

*United States v. Am. Library Ass'n, Inc.*, 539 U.S. 194 (2003)...................... 17, 18

*United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803 (2000) ................................ 6

**Glossary**

Pursuant to Circuit Rule 28(a)(3), the following is a glossary of acronyms and abbreviations used in this brief.

| | |
|---|---|
| HHS | U.S. Department of Health and Human Services |
| JA | Joint Appendix |
| JS | Joint Stipulation of Facts |
| NIH | The National Institutes of Health |

## Introduction and Summary of Argument

Plaintiffs' opening brief demonstrated that the NIH's use of keyword blocking to exclude speech critical of its animal testing practices on the comment threads of its public Facebook and Instagram accounts violates the First Amendment. The NIH opened its social media accounts to communicate with members of the public, who use the accounts' comment threads for speech on a virtually limitless array of topics. But from those otherwise open forums, the NIH has surreptitiously suppressed speech on one subject—animal advocacy. This suppression of speech disfavored by the government is textbook viewpoint discrimination, and it is unconstitutional regardless of whether the Court views the comment threads as open public forums or as limited ones.

Defendants' arguments to the contrary are meritless. Crucially, Defendants admit that the NIH's keyword blocking will indefinitely block animal advocacy from the comment threads even when it is indisputably on topic. The NIH's keyword blocking, in other words, "operate[s] to exclude [animal advocacy] viewpoints on otherwise includable topics" within the forum—which constitutes impermissible viewpoint discrimination. *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 325 (D.C. Cir. 2018); *see also Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). Defendants also fail to meaningfully dispute

that the NIH engages in unconstitutional viewpoint discrimination by selectively enforcing its "off-topic" rule against *only* animal advocacy.

Defendants argue that the NIH's exclusion of animal advocacy from the forum passes constitutional muster because Plaintiffs have not shown that the NIH was motivated by animus towards animal advocacy in selecting the keywords. Defs.' Br. 44–52. That argument ignores the record evidence supporting an inference of discriminatory motive, but it is also beside the point. As this Court has recently emphasized, viewpoint discrimination violates the First Amendment even without a showing of government animus against the views being censored. *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1131, 1144–45 (D.C. Cir. 2023). Indeed, it is Defendants who carry the burden of proving that the NIH's keyword blocking is *not* viewpoint-discriminatory—a burden they have failed to carry. Defendants argue that the NIH's keyword blocking targets animal advocacy not because of viewpoint but because animal advocacy comments are "overwhelmingly" off-topic, but the entire evidentiary basis for Defendants' claim— accepted uncritically by the district court—consists of comments made in response to a handful of posts, out of thousands of posts on the NIH's social media accounts. That scant evidence falls far short of satisfying the government's burden.

Defendants' other arguments fare no better. Even if the NIH's keyword blocking did not discriminate based on viewpoint, it would still fail First

Amendment scrutiny as a content-based speech restriction in an open public forum. The record demonstrates that the NIH's consistent practice has been to operate the comment threads as an open public forum without limitation on subject matter— except for the keyword blocking, which cannot on its own support the NIH's argument that it has limited the forum. *Stewart v. D.C. Armory Bd.*, 863 F.2d 1013, 1017 (D.C. Cir. 1988). Furthermore, the NIH's keyword blocking would be unconstitutional even if the Court treated the comment threads as limited public forums, because it is not reasonable for the NIH to ban animal advocacy when it is on-topic, and it is not reasonable for the NIH to enforce its off-topic rule against only animal advocacy and no other kinds of off-topic comments.

## Argument

### I.  The NIH's keyword blocking violates the First Amendment.[1]

### A. The record demonstrates that the NIH's keyword blocking discriminates based on viewpoint and Defendants have failed to carry their burden of proving otherwise.

As Plaintiffs' opening brief explained, the record in this case shows that the NIH's keyword blocking discriminates based on viewpoint and therefore violates

---

[1] Defendants' brief asserted that this Court lacked jurisdiction over this appeal because the district court's final order did not address all claims in the Complaint. *See* Defs.' Br. 19–23. With Defendants' consent, however, Plaintiffs have since filed a motion asking the district court to dismiss with prejudice Plaintiffs' remaining claims against Defendant Xavier Becerra regarding HHS's own Facebook page, and the district court has indicated that it will grant that motion. *People for the Ethical Treatment of Animals v. Tabak*, No. 21-CV-2380 (BAH) (D.D.C. Mar. 31, 2023),

the First Amendment no matter what kind of forum is at issue here. Pls.' Br. 22–32. Viewpoint discrimination is evident on the face of the custom keywords selected by the NIH for blocking, *id.* at 23, and that evidence is bolstered by the NIH's initial blocking of terms that even the NIH concedes reflected bias against animal advocates, *id.* at 24. In addition to this direct evidence of viewpoint discrimination, the NIH's illogical and unequal enforcement of its off-topic rule supports an inference of viewpoint discrimination under well-established First Amendment precedents. *Id.* at 25–29. The NIH's keyword blocking prohibits comments even when they are indisputably on topic, and thus impermissibly "operate[s] to exclude [certain] viewpoints on otherwise includable topics" within the forum. *Archdiocese of Wash.*, 897 F.3d at 325; Pls.' Br. 26. And the NIH's practice of enforcing its off-topic rule against essentially only animal advocacy is strong evidence that the NIH is principally interested in discriminating against animal advocacy, and not in suppressing comments that are off-topic. *See Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 802 (2011) ("Underinclusiveness raises serious doubts about whether the

---

Minute Order, Dec. 6, 2023. Plaintiffs have also requested that this Court remand the case to the district court, pursuant to Federal Rule of Appellate Procedure 12.1, for the limited purpose of allowing the district court to dismiss the remaining claims with prejudice. *See* Doc. No. 2030514. Once the claims regarding HHS's own Facebook page are dismissed with prejudice, the jurisdictional defect identified by Defendants will be cured and this appeal will be ready for this Court's consideration.

government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint."); Pls.' Br. 28–29.

Defendants devote much of their response to arguing that Plaintiffs have not shown that the NIH intended to discriminate against animal advocacy when it adopted its keyword blocking. Defs.' Br. 44–52. But that argument is wrong in two crucial ways. First, as this Court recently emphasized, claims of viewpoint discrimination do not require proof of discriminatory intent. *Frederick Douglass Found.*, 82 F.4th at 1131 ("The First Amendment prohibits discrimination on the basis of viewpoint irrespective of the government's motive."). "Viewpoint discrimination violates the First Amendment, 'regardless of the government's benign motive . . . or lack of animus toward the ideas contained in the regulated speech.'" *Id.* at 1144–45 (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015) (cleaned up)); *see also Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 117 (1991).[2] Accordingly, Plaintiffs are not required to

---

[2] Defendants elliptically suggest that "Plaintiffs do not advance their argument through reliance on *Frederick Douglass*," Defs.' Br. 49, and that therefore Plaintiffs must prove that the NIH acted with a discriminatory motive in order to prevail, *id.* 49–51. That is wrong on several counts. To begin, Plaintiffs cited *Frederick Douglass* in their opening brief for the proposition that "[t]he focus of the viewpoint discrimination inquiry is on whether the government has intentionally drawn lines that discriminate against certain perspectives, not on whether it was motivated by ill will." Pls.' Br. 24. And although Plaintiffs are not advancing a selective prosecution claim like the one that was before the Court in *Frederick Douglass*, Plaintiffs have repeatedly cited *Frederick Douglass* in arguing "[t]hat the NIH does not treat equally offending comments in the same way demonstrates that it is intentionally

show that the NIH was motivated by animus against animal advocates' views in selecting the keywords—although much of the evidence cited by Plaintiffs supports that inference. Pls.' Br. 25–29.

Second, it is the *government* that carries the burden of proving that the NIH's keyword blocking is not viewpoint-discriminatory, and Defendants have failed to carry that burden. *See, e.g.*, *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."). In presenting substantial direct and inferential evidence that the NIH's keyword blocking discriminates against animal advocates' viewpoints, Plaintiffs have made out at least a *prima facie* showing of viewpoint discrimination. Defendants have not overcome that showing by proving that the NIH's keyword blocking does not discriminate based on viewpoint.

Defendants assert that the NIH's keyword blocking is simply a byproduct of a viewpoint-neutral subject matter limitation prohibiting off-topic comments. But the evidence does not support Defendants' claim that the NIH was justified in

---

discriminating against a viewpoint." Pls.' Br. 29. Further, it is clear from the Court's discussion in *Frederick Douglass* that the principle that viewpoint discrimination claims do not require proof of discriminatory animus applies generally to First Amendment claims alleging viewpoint discrimination, not just to selective prosecution claims. *See* 82 F.4th at 1131, 1144–45.

singling animal advocacy out for prospective and indefinite blocking. Defendants assert, for example, that animal advocacy keywords are "overwhelmingly used in frequently recurring, off-topic comments." Defs.' Br. 44. The district court accepted Defendants' assertion uncritically and concluded that animal testing "was a flagrant offending subject matter in the comment threads." JA119 (Op. 26). But the evidence offered by Defendants in support of their assertion consists of purportedly off-topic comments made in response to only *five* posts out of 45 posts selected for inclusion in the Joint Stipulation.[3] This falls far short of substantiating Defendants' assertion that "the record establishes that off-topic comments on this subject matter are so prevalent that they drown out productive, on-topic discussion of the agency's public-health messages." Defs.' Br. 25.

---

[3] The evidence that Defendants now rely on to support their claim that the NIH's keyword blocking was adopted to "address the repetitive and overwhelmingly off-topic comments discussing animal testing," Defs.' Br. 8, consists of five posts and associated comments, all of which are in Exhibits 13, 15, 17, 18, and 43 of the Joint Stipulation, Defs.' Br. 8–9, 37–38. *See also* JA070–72 (JS ¶¶ 47–50). The district court relied on some but not all of these posts to conclude that "comments about animal testing comprised large shares of off-topic commentary on many of NIH's social media posts, becoming a highly prevalent irrelevant topic in violation of the commenting guidelines." JA119 (Op. 26) (citing to pages of Defendants' summary judgment brief referencing Exhibits 13, 17, and 18 as well as two posts appended by Defendants as Exhibits A and B to their summary judgment brief, which were not included in the Joint Stipulation). Defendants have also pointed to a single NIH Facebook post to support their claim that there have been "complaints about off-topic discussion of animal testing on NIH's pages." Defs.' Br. 26 (citing JA087–88 (JS ¶ 87), which references Exhibit 52 to the Joint Stipulation).

7

Moreover, beyond this scant evidence, Defendants have offered no evidence that animal advocacy comments are more likely to be off-topic than comments on other topics,[4] or are of such a nature or volume that they render the NIH's social media accounts unusable by others. And there is an additional reason to be skeptical of the NIH's bare assertions that animal advocates' comments are "overwhelmingly" likely to be off-topic: the NIH's overly narrow view of what it considers to be "on-topic." As Plaintiffs have already shown, a number of animal advocacy comments included in the Joint Stipulation that the NIH claims are "off-topic" are in fact relevant to the topic of the original post. Pls.' Br. 26–28 (describing multiple posts in the Joint Stipulation that explicitly or implicitly raise the subject of animal testing).

---

[4] Defendants argue that the fact that the NIH also bans a few terms that are unrelated to animal testing—including "marijuana," "cannabis," and "#believemothers"—shows that it has not arbitrarily singled out animal advocacy. Defs.' Br. 49. But there is nothing in the record to show why the NIH has blocked these terms, other than the bare statement in the Joint Stipulation that "[t]he NIH asserts that these terms are likewise calculated to capture frequently made comments that violate its comment moderation guidelines." JA076 (JS ¶ 59). And although Defendants claim in their brief that the NIH has determined that these terms are also likely to be found in off-topic comments, Defs.' Br. 49, the quote from the Joint Stipulation says nothing about which commenting guideline these terms are supposed to violate, JA076 (JS ¶ 59). If the NIH is suppressing other categories of speech on the basis of the same arguments it relies on to justify the suppression of animal advocacy, its suppression of those other categories of speech is also unconstitutional viewpoint discrimination.

In sum, the anecdotal evidence relied upon by Defendants—and accepted by the district court—is grossly insufficient to establish that the NIH's restriction on animal advocacy is viewpoint-neutral. It simply cannot be the case that the First Amendment permits the government to impose a permanent prior restraint on certain viewpoints in a forum based on a handful of instances in which individuals with those viewpoints spoke off-topic. And any such restraint is surely especially intolerable where, as here, the prior restraint is imposed selectively, and where many of the allegedly off-topic comments were in fact on-topic.

Finally, Defendants do not appear to defend the district court's incorrect conclusion that the NIH's keyword blocking is permissible because the NIH has excluded *animal testing* as a subject matter from the comment threads. *See* JA122 (Op. 29) ("[T]he filtering of words such as 'animal' and 'torture' merely targets a subject matter—animal testing—that defendants, as administrators of a limited public forum, are entitled to exclude."). Defendants have never claimed that the NIH is seeking to prohibit the discussion of animal testing as a subject matter within the forum. That is unsurprising, because the record shows that the NIH regularly introduces the subject matter of animal testing in its own posts, Pls.' Br. 26–27, and the NIH's policies do not prohibit the discussion of animal testing in comments as long as they do not contain the keywords associated with animal advocacy. The only subject matter limitation that Defendants defend in this case is the NIH's prohibition

on off-topic comments. But as Plaintiffs have already demonstrated, the NIH's use of keyword blocking as a means to enforce that subject matter limitation operates to exclude animal advocacy from "otherwise includable topics"—namely, on-topic comments—which constitutes viewpoint discrimination under well-established law. *Archdiocese of Wash.*, 897 F.3d at 325; *see also Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 108–12 (2001); *Rosenberger*, 515 U.S. at 831; *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 388, 393 (1993). The district court erred in concluding otherwise.[5]

**B. The NIH's keyword blocking also fails as a content-based speech restriction in either an open public forum or a limited public forum.**

**1. The NIH's consistent practice in operating its social media comment threads evinces an intent to create an open public forum, not a limited one.**

Although the record establishes conclusively that the NIH's keyword blocking is viewpoint-discriminatory, it would fail constitutional scrutiny even if it were

---

[5] As this Court explained in *Archdiocese of Washington*, the breadth of the forum is crucial to distinguishing between impermissible viewpoint restrictions and permissible subject-matter restrictions in a limited public forum. *See* 897 F.3d at 324, 327 (contrasting the breadth of the speech allowed by the student funding streams and meeting rooms at issue in *Good News Club*, *Rosenberger*, and *Lamb's Chapel* with the narrow and "utilitarian" forum of public bus advertising at issue in *Archdiocese of Washington*). The NIH's social media accounts, which allow for a broad range of speech on a large number of topics related to public health and the NIH's research, are like the "capacious" forums at issue in *Good News Club*, *Rosenberger*, and *Lamb's Chapel*, and unlike the public transit advertising space at issue in *Archdiocese of Washington*.

treated as a content-based restriction because in practice the NIH operates its social media accounts as open public forums and content-based restrictions in open public forums are subject to strict scrutiny—a standard Defendants do not even attempt to satisfy. The district court concluded that the NIH's social media accounts were limited public forums, but as Plaintiffs' opening brief demonstrated, that conclusion is wrong. Pls.' Br. 33–40.

Defendants' argument that the NIH clearly and consistently limited the scope of the forum is unconvincing. Defendants concede that the NIH did not post its commenting guidelines on its social media pages until after this lawsuit was filed, but they argue that users were on notice of the off-topic prohibition because they could in theory have found the commenting guidelines on a separate website maintained by the NIH, or because the off-topic rule is "common-sense." Defs.' Br. 30. But as Plaintiffs have already explained, the NIH's failure to inform commenters about its purported forum-limiting policies undercuts its claim that the comment threads are limited forums. Pls.' Br. 35; *see also Archdiocese of Wash.*, 897 F.3d at 324–25 (explaining that the forum doctrine requires the government to "prospectively and categorically set subject matter regulations").

Defendants' argument that the NIH has "consistently endeavored to enforce" its guidelines, Defs.' Br. 31, also falls flat in the face of the overwhelming evidence to the contrary. As Plaintiffs have shown, the record demonstrates that the NIH's

guidelines as a whole have been essentially unenforced. *See* Pls.' Br. 35–37.  And the NIH's suggestion that it exercises control over the forum through manual content moderation is belied by its concession that it does not do this in practice. *See* JA077 (JS ¶ 61); *see also* Pls.' Br. 17, 36.

The district court held, and Defendants argue here, that the mere fact that the NIH did not enforce its commenting guidelines perfectly does not mean that the NIH did not intend to limit the forum. JA112–13 (Op. 19–20); Defs.' Br. 32. But this is hardly a case of the NIH making a few errors on the margin, given that the NIH essentially does not enforce the off-topic limitation at all—except as to animal advocacy, which cannot alone be the basis for its claim that it has clearly and consistently limited the forum. *Stewart*, 863 F.2d at 1017 ("[T]he very fact that the government *has* restricted speech in the manner challenged in a forum case does *not* of its own weight demonstrate that the government did not intend to designate a public forum.").[6]  The NIH's general lack of enforcement of its off-topic rule

---

[6] The NIH relies on *Charudattan v. Darnell* and *Davison v. Plowman* to assert that other courts have held that the adoption and enforcement of rules for decorum is evidence of an intent to limit a forum. Defs.' Br. 33. But in both of those cases, the plaintiffs agreed, either at the outset of the case or for purposes of the appeal, that the forums were limited ones. *See Davison v. Plowman*, No. 1:16cv180 (JCC/IDD), 2017 WL 105984, at *2 (E.D. Va. Jan. 10, 2017) (explaining the plaintiff's argument that the county attorney's Facebook page was a limited public forum); *Charudattan v. Darnell*, 834 F. App'x 477, 480 (11th Cir. 2020) ("In a prior order, the district court determined that the Sheriff's Office Facebook page was a limited public forum, and no party argues to the contrary on appeal."). Also, in neither of those cases was the court confronted with a prior restraint targeting only

distinguishes this case from *Ridley v. Massachusetts Bay Transportation Authority*, cited by both the district court and Defendants. JA111 (Op. 18); *see also* Defs.' Br. 32. The question addressed in *Ridley* was whether "one example of a seemingly contradictory enforcement of [a] policy" would outweigh the government's otherwise "consistent[]" enforcement. 390 F.3d 65, 78 (1st Cir. 2004). Here, Plaintiffs have not pointed to only one example; to the contrary, the record is replete with examples showing that the NIH has not "consistently limit[ed]" speech that violates the guidelines, *id.*, and is instead only opportunistically invoking the guidelines now to justify its suppression of animal advocacy. *See* Pls.' Br. 35–36.

The nature of the NIH's social media accounts, and the NIH's failure to clearly and consistently enforce its commenting guidelines within the forums, also distinguish this case from the forums at issue in *Archdiocese of Washington* and *Bryant v. Gates*, on which Defendants attempt to rely. Defs.' Br. 30–31 (citing these cases for the argument that "[t]his Court has accepted even less definitive evidence to establish that the government had created a nonpublic forum"). In both of those cases, this Court held that the nature of the government property at issue—advertising on city bus exteriors and in military installation newspapers—was

---

a subset of disfavored speech. Both cases involved off-topic rules applied individually to comments based on the context of the post and the comments themselves.

incompatible with a government intent to open up the property for a wide range of expressive purposes. *See Archdiocese of Wash.*, 897 F.3d at 323–24; *Bryant v. Gates*, 532 F.3d 888, 896 (D.C. Cir. 2008). And in both cases, this Court found that the government defendants had clearly and consistently circumscribed the forum through their policies and practices by prohibiting the running of certain kinds of advertisements. *Archdiocese of Wash.*, 897 F.3d at 329–30; *Bryant*, 532 F.3d at 896–97. Here, by contrast, the NIH's social media accounts' central function is to facilitate expression, the NIH did not provide clear notice to commenters of the NIH's guidelines prohibiting off-topic comments, and the NIH's off-topic rule has been enforced haphazardly and discriminatorily.

The record makes clear, then, that the comment threads are designated open forums. As a result, the NIH's keyword blocking triggers strict scrutiny. *See* Pls.' Br. 40. The NIH does not even attempt to meet its burden of showing that its content-based restrictions on speech satisfy strict scrutiny, *see* Defs.' Br. 23–35, and for good reason. The NIH's keyword blocking fails strict scrutiny, and its conduct is therefore unconstitutional. Pls.' Br. 40–42.

### 2. The NIH's keyword blocking would be unconstitutional even if the comment threads were limited public forums.

Finally, the NIH's keyword blocking could not stand even if the Court were to conclude that the NIH's comment threads are limited public forums. However "forgiving" the reasonableness inquiry may be, the government must be able to show

14

that its restrictions are "consistent with [its] legitimate interest in maintaining the property for its dedicated use." *Archdiocese of Wash.*, 897 F.3d at 330. The NIH cannot do this. The NIH asserts an interest in limiting off-topic comments because they are disruptive, Defs.' Br. 23–25, 37–41, but rather than create "objective, workable standards" to help page administrators separate "what may come in from what must stay out," the NIH has targeted animal advocacy in a way that is completely "unmoored" from the interests allegedly motivating its speech restrictions. *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1888, 1891 (2018). The Court's reasonableness analysis must evaluate the NIH's actual implementation of its purported rule, not the reasonableness of an off-topic rule in the abstract. Here, the NIH's use of keyword blocking is so arbitrary and unreasonable that it does not further the NIH's stated interest in ensuring that speech in the comment threads is on-topic. As the record demonstrates, the NIH's keyword blocking targets disfavored speech—and animal advocacy in particular—irrespective of whether it is on- or off-topic.

First, the NIH's use of keyword blocking is unreasonable because it arbitrarily singles out animal advocacy for enforcement of its off-topic rule. As explained in detail above, *supra* Part I.A at 6–9, the district court erred in accepting the NIH's claim that animal advocacy comprises "large shares" of all off-topic posts on the NIH's social media, because the claim is not substantiated in the record. JA119 (Op.

15

26); *see also* Defs.' Br. 37, 39. Furthermore, there is nothing "unquestionably . . . disruptive," Defs.' Br. 41, about animal advocacy that makes this speech amenable to categorical treatment. *See* Pls.' Br. 46–47.

The NIH's unjustifiably selective implementation of keyword blocking confirms its unreasonableness. The record shows that the NIH has chosen *not* to target other subjects of off-topic commentary despite those subjects' arguable prevalence and disruptive nature. *See* Pls.' Br. 45–46.[7] And Defendants' admission that it would be "impractical" to use keyword filters to moderate off-topic discussion of COVID-19 as it "would also prohibit large swaths of productive, on-topic discussion" of agency-related news and public health information, *see* Defs.' Br. 41, only further underscores that the NIH's treatment of animal advocacy is discriminatory and unjustified. The admission shows that the NIH has decided not to use keyword blocking to target other kinds of off-topic comments because doing

---

[7] To the extent that the government relies upon user complaints about animal advocacy as evidence that this subject matter is inherently disruptive and therefore deserving of categorical treatment, *see* Defs.' Br. 38, it is important to note that there are examples within the record of users complaining about other kinds of off-topic speech, and yet the NIH has not taken steps to address these other kinds of off-topic speech with keyword blocking. *See, e.g.*, JA514 (JS Ex. 52 at *56) (Peter Roy's comment responding to a "troll" who posted an anti-vaccination comment and stating that "[n]othing that you've posted has anything to do with the new Anti-viral drug that is the subject of this thread").

so would result in blocking on-topic speech that the NIH values—unlike animal advocacy that is critical of the agency.

Second, the NIH's use of keyword blocking to bar animal advocacy even when it is on-topic, as it frequently is, amounts to an unreasonable prior restraint. *See* Pls.' Br. 43–45. Even if there were evidence to justify the NIH's decision to target off-topic animal advocacy, a prior restraint on all animal advocacy could not possibly survive First Amendment review because of the inevitable costs for protected, on-topic speech. No court has ever countenanced a prior restraint on a particular topic of conversation as a reasonable application of an off-topic rule. Pls.' Br. 43–44. This is because an off-topic rule, applied neutrally, must be defined by the topic being discussed in a meeting (or comment thread). Whether a particular comment is on- or off-topic can't be determined before one knows what the topic is and what the comment is.

Defendants rely on the Supreme Court's decision in *United States v. American Library Association, Inc.*, 539 U.S. 194 (2003), for the proposition that the Court has approved of keyword filters as a reasonable moderation tool, Defs.' Br. 42–43, but Defendants miss a crucial difference between *American Library Association* and this case. In *American Library Association*, the Court upheld a federal law requiring public libraries, as a condition for receiving certain funds, to use internet filtering software on their computers to screen out pornographic content. 539 U.S. at 201. In

rejecting the argument that the use of filters violated the First Amendment because of their tendency to block protected speech, the plurality noted that any constitutional concerns about the filters' overbroad blocking "are dispelled by the ease with which patrons may have the filtering software disabled." *Id.* at 209 (plurality); *see also id.* at 214 (Kennedy, J., concurring) (noting that as long as libraries expeditiously disabled the filters for adult patrons upon request, there was no significant burden on their First Amendment rights). The NIH's keyword blocking, by contrast, contains no mechanism to allow animal advocacy that is on-topic, and instead will indefinitely block speech that the NIH concedes is allowed in the forum. *American Library Association* only underscores the constitutional defects of the regime at issue in this case.

Third, the fact that keyword blocking is efficient and convenient for the NIH does not make it reasonable. The NIH concedes that its use of keywork blocking is imperfect, Defs.' Br. 40, 42, and attempts to justify its implementation of keyword blocking with claims that it "lacks sufficient resources to individually review each comment" and that its "available resources [cannot] match the ballooning number of comments." *See id.* 24, 31, 42. But the government cannot evade its First Amendment obligations due to limited resources or the fact that social media includes a large quantity of speech. Plaintiffs have never suggested that "reasonableness" requires perfection. But reasonableness does require a rational rule

18

that is fairly and consistently enforced. The NIH's keyword blocking does not meet this bar, and its resource constraints cannot be used to justify the adoption of an unreasonable and unconstitutional practice. *See R.J. Reynolds Tobacco Co. v. FDA*, 845 F. Supp. 2d 266, 276 (D.D.C. 2012) (noting that the government may not avoid less restrictive means because officials desire to save money), *aff'd* 696 F.3d 1205 (D.C. Cir. 2012); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988) ("[T]he First Amendment does not permit the State to sacrifice speech for efficiency.").

Accordingly, the NIH's keyword blocking is unreasonable and therefore unconstitutional.

## Conclusion

For the foregoing reasons, this Court should reverse the decision below and remand with instructions to enter judgment in favor of Plaintiffs.

Dated: January 5, 2024                    Respectfully submitted,

                                            /s/ Katherine A. Fallow
                                            Katherine A. Fallow
                                            Alexia Ramirez
                                            Stephanie Krent
                                            Jameel Jaffer
                                            Knight First Amendment Institute at Columbia University
                                            475 Riverside Drive, Suite 302
                                            New York, NY 10115
                                            (646) 745-8500
                                            katie.fallow@knightcolumbia.org

*Counsel for Plaintiffs–Appellants*

/s/ Christopher A. Berry
Christopher A. Berry
Animal Legal Defense Fund
525 E. Cotati Ave.
Cotati, CA 94931
(707) 795-2533 ext. 1041
cberry@aldf.org

Caitlin M. Foley
Animal Legal Defense Fund
150 South Wacker Drive, Suite 2400
Chicago, IL 60606
(707) 795-2533 ext. 1043
cfoley@aldf.org

*Counsel for Plaintiffs–Appellants Madeline Krasno and Ryan Hartkopf*

/s/ Ashley Ridgway
Ashley Ridgway
Asher Smith
Aaron Frazier
PETA Foundation
1536 16th Street NW
Washington, DC 20036
(202) 483-7382
ashleyr@petaf.org

*Counsel for Plaintiff–Appellant People for the Ethical Treatment of Animals, Inc.*

**Certificate of Compliance**

This brief complies with the type-volume limitations of Fed. R. App. P. 28.1(e)(2) because it contains 4,922 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as calculated by the word-counting function.

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: January 5, 2024

 /s/ Katherine A. Fallow
Katherine A. Fallow

**Certificate of Service**

I, Katherine A. Fallow, certify that on January 5, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


Dated: January 5, 2024

                                             /s/ Katherine A. Fallow
                                            Katherine A. Fallow

22